UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 23-cr-190 (ABJ) |
| ASHLEY GAUSE, et al., : | |
| : | |
| DEFENDANTS. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS
CELLPHONE EVIDENCE**

The United States of America submits this opposition to the defendants' motion to suppress evidence obtained pursuant to a search warrant for four cellphones (ECF No. 168). The defense asserts that the search warrant lacks probable cause and was obtained too long after the cellphones were initially seized on May 26, 2021. The defense arguments are without merit. The search warrant easily meets the low bar of probable cause based on its connection to the May 26, 2021 robbery and others, and the type of evidence likely on the cellphones based on Agent Potrafka's prior experience. Further, the November 19, 2021 search warrant was timely given the previously-obtained June 7, 2021 search warrant out of Anne Arundel County and that fact that the Federal Bureau of Investigation ("FBI") did not link the May 26, 2021 robbery to its investigation until September 2021. For that and the following reasons, the defendants' motions should be denied.

**BACKGROUND**

This case involves eighteen robberies of pharmacies and cellphone stores throughout the District of Columbia, Maryland, Virginia, and New Jersey, by overlapping combinations of Defendants Ashley Gause ("Gause"), D'Marrell Mitchell ("Mitchell), Terrance Branham ("Branham"), and Deaundre Blount ("Blount")[1] from May 2020 through May 2021. Members of

---

[1] Co-defendants Ashawntea Henderson, Floyd Neal, and Glenn Dolford have pled guilty.

1

the conspiracy, led by Gause and Mitchell, conducted research into potential store targets, drove sometimes significant distances to rob these stores, burst into the stores when they were thinly occupied, stole cellphones and narcotics, and then distributed the proceeds. Gause and Mitchell were the constants in the conspiracy, apparently recruiting others, in some cases younger men. The recruited individuals switched in and out of the conspiracy over time, oftentimes conducting the actual robberies while Gause and Mitchell remained in vehicles. Gause primarily served as the driver in these offenses but had connections with individuals who could resell phones and narcotics. Following the robberies, Gause would communicate with the sources and negotiate prices for the sale of the robbery proceeds.

*Events Leading Up to Seizure of the Cellphones on May 26 and 27, 2021*

In May of 2021, the Federal Bureau of Investigation ("FBI") was investigating a series of robberies that occurred in November of 2020 in the District of Columbia and Maryland. A connection was suspected between the November robberies based on the similarity of the *modus operandi*, including the appearance of the robbers and the closeness in time—but none of the defendants had been identified as suspects at that time.

Then, on May 26, 2021, at approximately 1:04 a.m., Anne Arundel County Police Department ("AACPD") responded to the CVS Pharmacy located at 28 Magothy Beach Road in Pasadena, Maryland for a report of a hold-up alarm. Exhibit A (Search Warrant No. 21-cr-390) ¶ 14. When AACPD arrived at the CVS, Corporal Koch observed a dark blue Volkswagen SUV with a Virginia license plate leaving the parking lot. The SUV nearly struck Corporal Koch's patrol vehicle as it fled the scene. Exhibit A ¶ 15. After a lengthy pursuit, the Volkswagen came to a stop near Interstate 495 and Kenilworth Avenue in Prince George's County, Maryland. *Id.* The only occupant of the Volkswagen was Gause, who was taken into custody. *Id.* ¶ 16. Incident

to her arrest, law enforcement recovered a black Apple iPhone XS Max, which was seized as evidence. *Id.*

As Corporal Koch was pursuing Gause, Lieutenant Shanahan saw three individuals flee the CVS on foot. *Id.* ¶ 17. Lieutenant Shanahan ordered the individuals to stop but they continued toward the Green Turtle restaurant, located at 20 Magothy Beach Road. *Id.* At approximately 1:11 a.m., dispatch received a call for a "hatch alarm" at the Green Turtle. AACPD officers responded to investigate and ultimately discovered Mitchell and another individual, Terrance Brown,[2] inside the Green Turtle. *Id.* ¶¶ 18-19. Officers noticed that the hatch to the roof was unsecured and discovered a large amount of cash on the roof. *Id.*

AACPD interviewed CVS employees and learned that, at approximately 1:04 a.m., three black males wearing hooded sweatshirts (with the hoods up), gloves, and face masks, entered the CVS and approached the cashier. *Id.* ¶ 20. They bound the cashier's hands with zip ties and ordered the cashier to open the store's safe, which was located inside an office. *Id.* The cashier ultimately provided the suspects with the code to the safe and the suspects removed $3,959.00 in U.S. Currency. *Id.* Two of the suspects remained with the cashier and the third proceeded to the pharmacy, where he bound the pharmacist's hands and ordered the pharmacist to open the pharmacy safe that contained oxycodone. *Id.* The suspects ultimately removed 80 bottles of prescription medications, which were later recovered outside of the CVS. *Id.* ¶ 19.

Based on the Volkswagen's involvement in the robbery, AACPD obtained a search warrant for the car, Exhibit B (Anne Arundel Vehicle Search Warrant), and recovered three cellphones from inside: (1) a purple Apple iPhone 11; (2) a black Apple iPhone XR; and (3) a black Apple iPhone Pro Max. *Id.* ¶ 22. AACPD also recovered zip ties, which was consistent with the May 26,

---

[2] Terrance Brown was not charged as a part of this case and has since passed away.

2021 robbery during which the suspects used zip ties to bind both victims' hands. *See* Exhibit A ¶ 20. On June 7, 2021, AACPD obtained a search warrant of all four cellphones (the cellphone recovered on Gause and the three recovered in the car). Exhibit C (Anne Arundel Cellphone Search Warrant).

Gause and Mitchell were charged in Anne Arundel County for the May 26, 2021 robbery following their arrest. They were detained pending trial and ultimately both pled guilty and were sentenced to a period of incarceration. Gause remained in custody until January 2023. Mitchell remained in custody until his arrest in this case in June of 2023.

*FBI Washington Field Office's Investigation*

At the time of the May 26, 2021 robbery in Maryland, FBI's Washington Field Office had not tied any of the defendants in this case to the November 2020 robberies. Indeed, they were not aware of the May 26, 2021 robbery or its significance until mid-September 2021.

Soon after the November 2020 robberies, the FBI obtained four cellphone tower search warrants (20-sc-3123, 20-sc-3124, 20-sc-3125, and 20-sc-3126) in an effort to identify whether any cellphones connected to multiple towers where the robberies occurred. The FBI's Cellular Analyst Survey Team ("CAST") reviewed the returns and in August 2021, provided information to the case team resulting in the discovery of a phone number ending in 7885 ("Phone Number 1"), which had connected to multiple cell towers subject to the search warrants. Notably, the subscriber name was not (and typically is not) provided as a part of the warrant return. Thus, on September 14, 2021, FBI submitted a preservation request for Phone Number 1. FBI conducted additional research of Phone Number 1, which revealed that Phone Number 1 was associated with Gause, and from there, the May 26, 2021 robbery.

On September 15, 2021, after discovering Gause's connection to its case, FBI contacted AACPD to obtain the May 26, 2021 robbery report. On September 30, 2021, the FBI took custody of the four cellphones previously seized by AACPD (hereinafter "the Target Devices"). On November 19, 2021, the FBI sought and obtained a search warrant in the District of Columbia for the Target Devices. Exhibit A (D.D.C. Search Warrant 21-sw-390). The defense now challenges the constitutionality of the November 19, 2021 search warrant.

## APPLICABLE LEGAL STANDARD

The Fourth Amendment proscribes "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

A showing of probable cause "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). In the search warrant context, a showing of probable cause requires only a "fair probability that . . . evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An application for a search warrant "must demonstrate cause to believe that 'evidence is likely to be found at the place to be searched.'" *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)). In addition, there must be "a nexus . . . between the item to be seized and criminal behavior." *Id.* (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)).

When a search warrant is challenged, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis . . . for conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (omission and alteration in original) (quoting *Jones v. United States*,

362 U.S. 257, 271 (1960)). Affidavits in support of search warrants have "a presumption of validity," *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review," because "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

## ARGUMENT

As an initial matter, Branham and Blount lack standing to the challenge the November 19, 2021 search warrant. Although Gause and Mitchell have standing, their arguments fail because the warrant authorizing the search of the Target Devices, which were seized from Gause and the Volkswagen, is supported by probable cause pursuant to the Fourth Amendment. Moreover, even if the search warrant was deficient in some way, the evidence obtained from the Target Devices was recovered in good faith reliance on the warrant and should not be excluded. Thus, the Court should deny the defendants' motion to suppress in its entirety.

**I.    Defendants Branham and Blount Lack Standing to Challenge the Search Warrant**

On June 13, 2025, shortly after Mitchell filed the instant motion, Branham, Blount, and Gause moved to join the motion, among others. ECF Nos. 169, 170, and 172. On June 17, 2025, the Court granted their motions to join.

Before the Court reaches the constitutionality of a search, the defendant must establish Fourth Amendment "standing" to challenge the search by showing that "*his own* Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (emphasis added) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's

6

premises or property has not had any of his Fourth Amendment rights infringed."). Importantly, a defendant "bears the burden on a motion to suppress of establishing not only that the search was unlawful, but also that he had a legitimate expectation of privacy" in the premises searched. *United States v. Zabalaga*, 834 F.2d 1062, 1065 (D.C. Cir. 1987) (citation omitted).

Although not explained in his motion, Mitchell has a privacy interest in the Target Devices because one of Target Devices found in the Volkswagen belonged to him. Gause similarly appears to have standing, although she does not address it, because one of the Target Devices is the cellphone seized from her person incident to her arrest. Neither Branham nor Blount—as far as the government is aware—were involved in the May 26, 2021 robbery or were associated with any of the Target Devices. In fact, Branham was incarcerated at the time of the May 26, 2021 robbery. Thus, neither Branham nor Blount had an expectation of privacy in the Target Devices and lack standing to challenge the search. Thus, the Court should deny Branham and Blount's motions to suppress on standing alone.

## II.    The Search Warrant Was Supported by Probable Cause

The thrust of the defendants' motion is that the Target Devices, specifically the three cellphones found in the Volkswagen, are not sufficiently connected to the CVS robbery and therefore the search warrant fails to establish probable cause.[3] ECF No. 168 at 4. Specifically, the defense argues that "the only connection between the three cellphones and the suspected criminal activity—the CVS robbery—was the phones' mere presence near the robbery in Gause's car.

---

[3] Mitchell's motion focuses on the three cellphones found in the Volkswagen and does not address probable cause as it relates to Gause's cellphone, which was recovered on Gause's person. Gause provides not additional arguments in her motion to join. *See* ECF No. 172. Nonetheless, the government will address probable cause as it relates to all of the Target Devices in an abundance of caution as Mitchell initially indicates that all four cellphones are implicated by his motion. *See* ECF No. 168 at 1 (stating that Mitchell seeks suppression of "all evidence obtained based on a warrant for cellphones seized on May 27, 2021).

There is no allegation anyone saw the phone used in the CVS robbery, nor any robbery prior." *Id.* The defendants' contention that the Target Devices are not sufficiently connected to criminal conduct is without merit.

*First*, the search warrant sufficiently links the Target devices to suspected criminal activity—the May 26, 2021 robbery and a series of robberies that occurred in November of 2020 in Washington, D.C. and Maryland. As laid out in the affidavit, one of the Target Devices was found on Gause (the getaway driver), who fled the scene of the May 26, 2021 robbery in a Volkswagen. Exhibit A ¶¶ 14-22. The remaining three Target Devices were recovered in the Volkswagen, along with zip ties, after a lawful search. *Id.* Those facts alone are adequate nexus to criminal activity. But the warrant went further, tying Gause's device to Phone Number 1, which was linked to several more robberies based on tower dump data. *Id.* ¶¶ 24-50. The *modus operandi* of the November robberies and the presence of Gause's cellphone, as laid out in the affidavit, lends further support the proposition that Gause and her co-conspirator carried their cellphones during the commission of robberies. *Id.* Moreover, the presence of the Target Devices in the getaway car and on Gause's person is consistent with Agent Potrafka's experience regarding the use of cellphones surrounding robberies. *Id.* ¶ 7.

*Second*, the affidavit amply detailed the evidence likely to be found on the Target Devices. Exhibit A ¶ 7. Agent Potrafka described several types of electronic evidence that, based on his prior experience, would likely to be found on the Target Devices. *Id.* For example, Agent Potrafka stated that the Target Devices were likely to contain photo and videos of subjects engaging in the illegal activities themselves, including brandishing firearms. *Id.* He also said it is common for individuals engaged in robberies to use cellphones to further their criminal activities, including by exchanging information with co-conspirators and buyers of stolen property. *Id.* Indeed, the

inference is obvious in a crime such as this, where multiple individuals are engaged in coordinated criminal activity. These individuals necessarily must coordinate and in the modern age, that coordination is almost always accomplished through cellphones. The mere fact that the Target Devices were recovered following the robbery is evidence of their use in coordinating the robbery, which is further bolstered by the presence of Gause's cellphone in the location of five other robberies in November 2020. Further, the location of the Target Devices themselves are evidence of the robberies. Their location at the scene of the robbery supports the inference that their owners were involved.

The defense takes issue that the affidavit does not allege that the suspects used cellphones during the robberies. ECF No. 168 at 4. But, in the context of electronic devices like cellphones, courts have repeatedly upheld search warrants based on affidavits that do not explicitly allege that the suspect used a cellphone in relation to the crimes being investigated. *See, e.g.*, *United States v. Morton*, 46 F.4th 331, 338 (5th Cir. 2022) (upholding denial of motion to suppress cellphone search warrant evidence where defendant "had multiple phones in his car along with the drugs, which our court and others have recognized can indicate that the phones are being used for criminal activity").

Instead, courts have often found such warrants supported by probable cause based on law enforcement's sworn experience that such devices are used by certain types of offenders to commit certain types of offenses. *See, e.g.*, *United States v. Lowe*, 676 F. App'x. 728, 732–33 (9th Cir. 2017) (upholding denial of motion to suppress cellphone search warrant evidence where affidavit described drug and gun evidence and included ATF agent statement that "based on his experience and training in conducting federal firearms and narcotics investigations, drug dealers commonly use cellphones to facilitate the sale of drugs"); *United States v. Estime*, 2020 WL 6075554, at *18–

9

19 (S.D.N.Y. Oct. 14, 2020) (denying motion to suppress cellphone search warrant evidence and explaining that "courts have found probable cause to support the search of a cellphone seized incident to an arrest even where the search warrant application did not introduce into evidence *any* specific communications sent from, or received by, the seized phone" (emphasis in original)); *United States v. Coleman*, 2020 WL 5229042, at *37–38 (N.D. Ga. Jan. 14, 2020) (quoting *United States v. Bradley*, 644 F.3d 1213, 1263 (11th Cir. 2011))), *report and recommendation adopted by* 2020 WL 2538931 (N.D. Ga. May 18, 2020) ("[An] affidavit need not establish direct observation of use of [a] cellular telephone to facilitate the criminal conduct; instead, the 'fair probability' that the contents of the cellular telephone may contain evidence of the crime may be established from the affiant's 'expectation, based on prior experience and the specific circumstances of the alleged crime.'"); *United States v. Hoey*, 2016 WL 270871, at *9 (S.D.N.Y. Jan. 21, 2016) ("Courts have commonly found probable cause to search cellphones possessed by defendants arrested in connection with ongoing drug-distribution crimes based on the experience of agents familiar with narcotics trafficking that traffickers commonly use cellphones to communicate in the course of their narcotics distribution, as well as to store relevant information, including the names and contact information of suppliers, purchasers, and confederates.") (collecting cases)).  That is the case here, where Agent Potrafka relied on his prior experience to establish that evidence of the crimes would likely be on the Target Devices.  *See* Exhibit A ¶ 7.

Given the Target Devices nexus to both the May 26, 2021 and November 2020 robberies, and the likelihood that evidence of the robberies would be on the Target Devices, the search warrant comfortably meets the low bar of probable cause.

**III.     The Search Warrants Were Sought in a Timely Manner**

The defense also contends the government "waited 176[] days" to obtain the cellphone search warrant, which warrants suppression. *Id.* In justifying their finding, the defendants summarily state that "[t]he discovery reveals no good reason for the delay." The defense allegations are without merit.

As laid out above, search warrants were obtained without delay by both Anne Arundel County and the FBI. The cellphones were initially seized on May 26, 2021. Exhibit A ¶¶ 14-22. On June 7, 2021, less than two weeks after the seizure, Anne Arundel County obtained a search warrant for the Target Devices. Exhibit C. At that time, FBI was investigating the November 2020 robberies but had not identified any of the defendants involved in the May 26, 2021 robbery as suspects. The FBI did not become aware of the May 26, 2021 robbery until September 2021 when the significance of Phone Number 1 was discovered and connected to Gause. It was only then that FBI realized the connection to the May 26, 2021 robbery and requested the Target Devices from Anne Arundel County. And at the time the FBI took custody of the cellphones, a search warrant had *already* been obtained. *See* Exhibit C. However, in an abundance of caution, the November 21, 2021 search warrant was sought in the District of Columbia. Exhibit A.

This more thorough accounting of the timeline reveals no delay in obtaining a search warrant for the Target Devices, as Anne Arundel County obtained their warrant within two weeks of seizure. Moreover, once the FBI realized the connection to their investigation and took custody of the Target Devices, it quickly sought an additional search warrant in the District of Columbia in an abundance of caution.

### A. Even if a Delay Occurred, the Delay Was Brief And Reasonable and Suppression Would Not Be Appropriate

If the Court for some reason believes that a delay occurred, any delay was brief and reasonable.

Most of the cases addressing whether a delay renders a search unreasonable are distinct from this case where a search warrant was obtained within two weeks. Nevertheless, the relevant inquiry requires courts to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Wilkins*, 538 F. Supp. 3d 49, 91 (D.D.C. 2021). As discussed in *Wilkins*, the Eleventh Circuit has provided a useful list of factors to consider when conducting the balancing test:

> (1) the significance of the interference with an individual's possessory interest; (2) the duration of the delay; (3) whether the individual consented to the seizure; (4) the Government's legitimate interest in holding the property as evidence, and (5) whether law enforcement were diligent in pursuing their investigation.

*Id.* (citing *United States v. Laist,* 702 F.3d 608, 613–614 (11th Cir. 2012)); *see also See Matter of the Search of Twenty-Six (26) Digital Devices & Mobile Device Extractions That Are Currently in the Possession of L. Enf't In Washington D.C.*, No. 21-SW-233 (GMH), 2022 WL 998896, at *10 (D.D.C. Mar. 14, 2022); *Smith*, 967 F.3d at 206; *United States v. Laist*, 702 F.3d 608, 613-14 (11th Cir. 2012); *United States v. Wilkins*, 538 F. Supp. 3d 49, 91 (D.D.C. 2021); *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012); *In re Application for Search Warrant*, 527 F. Supp. 3d 179, 183 (D. Conn. 2020); *United States v. Wright*, 534 F. Supp. 3d 416, 423-24 (M.D. Pa. 2021).[4]

---

[4] The D.C. Circuit has not addressed the factors that should be used to evaluate the constitutionality of a delay between a warrantless seizure and obtaining a search warrant. The *Wilkins* Court primarily employed the framework adopted by the Eleventh Circuit.

As to the first factor, Mitchell and Gause were arrested on May 26, 2021, charged, and held pending trial, and sentenced to a period of incarceration. Mitchell has not been released from custody since May 26, 2021, and Gause was in custody from May 26, 2021 until January 2023. She was then arrested in this case in June 2023. Their incarceration during the entire period in question significantly reduces their possessory interest in the Target Devices, and sharply undermines any showing that the delay caused a significant interference with that possessory interest. Significantly, the reasonableness of a seizure is not judged in terms of a metaphysical impact on possessory interests. Rather, a defendant must demonstrate "*actual* interference with their possessory interests." *Segura* v. *United States*, 468 U.S. 796, 813 (1984) (emphasis added). Where a defendant is in custody and unable to use or possess seized property, the "actual interference" with possessory interests caused by a delay in obtaining a search warrant may be "virtually nonexistent." *Id*. (finding that the delay in obtaining a warrant while police temporarily seized and occupied the defendant's dwelling was not unreasonable where the defendants were in police custody "throughout the entire period the agents occupied the apartment" and where there was "no evidence that the agents in any way exploited their presence in the apartment" during the delay); *see also United States v. Sykes*, 65 F.4th 867, 879 (6th Cir. 2023), cert. denied, 144 S. Ct. 576 (2024) (holding that a defendant "had a limited possessory interest in the phone because he was not permitted to have the phone while he was in custody").

Courts assessing claims of unreasonable delay in obtaining a search warrant have thus heavily weighed whether the defendant was in custody during the period on which the claimed constitutional violation is based and have routinely found that this factor precludes the finding of a constitutional violation. *See In re Application for Search Warrant*, 527 F. Supp. 3d at 185 (recognizing that courts should "consider not only the importance of the property, but also the

utility of the property, in all the circumstances" and noting that the defendant's pretrial detention would have made him unable to make use of his devices "even if they had not been seized."); *Wright*, 534 F. Supp. 3d at 427 ("While incarcerated [. . .], Wright's property interest in the phones was also diminished because he could not have possessed the phones"); *see also United States v. Johnson*, 875 F.3d 1265, 1277 (9th Cir. 2017) (finding that one-year delay in obtaining a search warrant following the seizure of a cellphone was not unreasonable when the defendant was in custody during the entire time of delay and never sought the return of the phone); *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (noting that "[w]here individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced" and finding that delay in obtaining search warrant therefore had a "minimal" impact on the defendant's possessory interests).

The second factor to consider is the length of the delay. While the defendants claim a 176-day delay, that number is debunked by a closer look at the Anne Arundel and FBI investigations. Anne Arundel County obtained a search warrant within two weeks of seizure of the Target Devices. The FBI discovered the significance of the May 26, 2021 robbery in September, took custody of the Target Devices on September 30, 2021, and obtained a search warrant on November 19, 2021. The time between September 30, 2021 and November 19, 2021 is a short delay given the complexity of this case. The defendants carried out robberies up and down the east coast—a strategy that made it difficult for law enforcement to connect the robberies to each other and the defendants. Given the number of robberies involved, the number of perpetrators, and the coordination between different law enforcement agencies, a delay of a month and a half is relatively short.

The third factor to consider is consent—there is no allegation here that any of the defendants consented to the search of the Target Devices.

Fourth is the government's interest in holding the Target Devices as evidence. Based on the probable cause laid out above, showing how the Target Devices are connected to the robberies, the government has a strong interest in retaining the Target Devices. *Compare Wright*, 534 F. Supp. 3d at 427 (stating that the government had a "strong" interest in devices seized "based on probable cause" when they were found incident to the defendant's arrest after a bag of marijuana fell out of his pocket) *with Wilkins*, 538 F. Supp. 3d at 94-95 (stating that "the Government's interest in a seizure is strong when there is probable cause to believe the seized item contains evidence of a crime" and finding undue delay in obtaining a search warrant for a phone where, among other things, the government retained the phone "for over 15 months" with "certainly no probable cause or reasonable suspicion" that it contained evidence of a crime).

Last is law enforcement's diligence in pursuing their investigation. This factor weighs heavily in favor of finding any delay reasonable. As laid out above, as connections were made between robberies and defendants, the FBI diligently pursued the next step. And despite the number of robberies, the number of defendants, and the disparate locations of the robberies, the FBI was able to connect the defendants in this case to the May 26, 2021 robbery and thereafter the Target Devices. Only 15 days passed between when the FBI realized Gause's connection to the November 2020 robberies (approximately September 14, 2021) to when FBI obtained the Target Devices from Anne Arundel County (September 30, 2021), and only a month and a half until the FBI obtained the search warrant (November 19, 2021). That search warrant not only included the facts of the May 2021 robbery, but laid out the facts of the November 2020 robberies and the relationship with Gause's cellphone location. Putting together that search warrant required

diligence and the review of several different local law enforcement case files. Within that context, a month and half was a reasonable amount of time to retain the devices before obtaining the search warrant in D.C. (especially in light of the existing Anne Arundel County search warrant).

It is important to emphasize that, under Supreme Court precedent, a court's determination that a delay amounts to a constitutional violation does not trigger the automatic suppression of the resulting evidence. The exclusionary rule is a "prudential doctrine," the "sole purpose" of which is to "deter future Fourth Amendment violations." *Davis* v. *United States*, 564 U.S. 229, 236-237 (2011). Only when law enforcement exhibits "'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights" does the exclusion of evidence outweigh its costs to the justice system. *Id.* at 238. In accord with this clear authority, the finding of a Fourth Amendment violation based on the delay between a warrantless seizure of property and the issuance of a search warrant must be followed by a *separate* assessment of whether the constitutional violation should result in the suppression of evidence obtained from the search of that property. *See Herring v. United States*, 555 U.S. 135, 141(2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."); *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (noting that the suppression of evidence is a "last resort" meant to deter future Fourth Amendment violations by law enforcement.). Here, no deliberate, reckless, or grossly negligent disregard for the Fourth Amendment has been displayed by either Anne Arundel County, who sought a search warrant quickly after seizure of the Target devices, or the FBI, who, despite the existence of a prior search warrant, sought an additional search warrant in an abundance of caution.

Given the expediency with which Anne Arundel County obtained its search warrant, and the caution shown by the government in this case in obtaining a further search warrant soon after taking possession of the Target Devices, the defense argument as to a delay must fail.

### IV.    Exclusion is Not an Appropriate Remedy Because the Good Faith Exception Applies

Even if this Court were to find that the warrant is not sufficiently supported by probable cause, it should still deny the defendants' motion to suppress because the good faith exception to the exclusionary rule applies.  And the defendants do not argue otherwise—indeed, they do not address the good faith exception at all.

The exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations. . . . Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted."  *Davis v. United States*, 564 U.S. 229, 236–37 -(2011). "[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922 (1984).  Therefore, the exclusionary rule generally does not apply to evidence seized by "an officer acting with objective good faith [who] has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 921.

"[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or, as [the Supreme Court] ha[s] sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). To nevertheless justify suppression, the defendants must show that the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.  Put another way, to conclude that the good faith doctrine does not apply requires a finding that the warrant judge made "not just a reasonable mistake, but

an unacceptable error indicating gross incompetence or neglect of duty." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, a U.S. Magistrate Judge issued a search warrant based on ample probable cause, as laid out extensively above. *See* Exhibit A. Not only that, a judge in Anne Arundel County also issued a search warrant on the same facts. *See* Exhibit C. Law enforcement therefore acted in reasonable reliance on the search warrant, and suppression would not be an appropriate remedy should the Court find a Fourth Amendment violation. *See Davis v. United States*, 564 U.S. 229, 236–37 (2011) ("Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted.").

## CONCLUSION

For all the foregoing reasons, the Government requests that the Court deny defendants' motion to suppress the evidence obtained from the Target Devices.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:   /s/ *Sarah Martin*
Sarah Martin
Assistant United States Attorney
D.C. Bar 1612989
601 D Street NW
Washington, D.C.
(202) 252-6775
Sarah.Martin@usdoj.gov